UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JANICE F. KUHR,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

Case No. 3:13-cv-05253-BHS-KLS

REPORT AND RECOMMENDATION

Noted for March 21, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed and this matter should be dismissed.

FACTUAL AND PROCEDURAL HISTORY

On July 6, 2009, plaintiff filed an application for disability insurance benefits, alleging

disability as of May 31, 2009, due to a macular hole. *See* Administrative Record ("AR") 125-28, 142. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 56-57. A hearing was held before an administrative law judge ("ALJ") on July 28, 2011, at which plaintiff, represented by counsel, appeared and testified, as did her husband, George Kuhr. *See* AR 37-55.

On August 23, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. *See* AR 15-36. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 30, 2013, making the ALJ's decision defendant's final decision. *See* AR 1-4; *see also* 20 C.F.R. § 404.981, § 416.1481. On April 3, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. *See* ECF #1. The administrative record was filed with the Court on July 12, 2013. *See* ECF #9. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in failing to properly develop the record; (2) in finding her eye impairment non-severe at step two; (3) in discounting plaintiff's credibility; (4) in weighing the lay statements; and (5) in failing to obtain vocational expert testimony at step five. In support of her arguments, plaintiff submits two exhibits. *See* ECF ##12, 13. In response, defendant moves to strike these exhibits because they are not part of the administrative record. ECF #14 at 4-5.

For the reasons set forth below, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

DISCUSSION

I. Defendant's Motion to Strike

Defendant asks the Court to strike the extra-record evidence submitted by plaintiff, which includes an internet printout discussing macular degeneration, ECF #12, and descriptions from Occupational Information Network of plaintiff's past relevant work, ECF #13. ECF #14 at 4-5. The district court's function is to review the correctness of the decision of the Commissioner of Social Security (the "Commissioner") at the time it was made. *Hudson v. Bowen*, 849 F.2d 433, 435 (9th Cir. 1988). A court may also properly consider any additional materials submitted to the Appeals Council in conjunction with a claimant's request for review. *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). With respect to new evidence not contained in the administrative record, the court may remand a case "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g); *see also Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). Plaintiff has made no showing that the new evidence is material or that there is good cause for her failure to bring this evidence to the Commissioner's attention at an earlier stage in this proceeding. Thus the undersigned will not consider these exhibits in this report and recommends that defendant's motion to strike be GRANTED.

II. Legal standards for review of the ALJ's decision

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991) ("A

decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

III. The ALJ's Duty to Develop the Record

The ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). In addition, the Social Security Regulations state that when evidence from a

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

medical source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification when his or her report "contains a conflict or ambiguity that must be resolved" or when it "does not contain all the necessary information." 20 C.F.R. § 416.912(e)(1). However, it is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the duty to "conduct an appropriate inquiry" is triggered. *Tonapetyan*, 242 F.3d at 1150 (citations omitted); *see also Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

Plaintiff alleged disability based on visual impairments, AR 125-28 and 142, but the ALJ found these impairments to be non-severe, AR 21. Plaintiff contends the ALJ erred by failing to contact her treating optometrist, Dennis Fellner, O.D., or a medical expert to understand the extent of her macular degeneration and its effect on basic work activities. Plaintiff, however, fails to cite any ambiguity in the evidence or explain how the record was inadequate to allow for a proper evaluation of the evidence. Indeed, there is no ambiguity in Dr. Fellner's opinion that "[i]t would be difficult for [plaintiff] to perform detailed close tasks and drive a motor vehicle." AR 237. At best, plaintiff asserts that Dr. Fellner's opinion is inconsistent with the opinion of reviewing doctor Jeffrey Merrill, M.D., but a mere inconsistency—rather than an ambiguity—is well within the ALJ's authority to resolve. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Accordingly, plaintiff has failed to establish error on this basis.

IV. <u>The ALJ's Step Two Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or

not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85-28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that [her his] "impairments or their symptoms affect her [his] ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments of panic disorder without agoraphobia and adjustment disorder with grief, but he found her vision impairments non-severe:

> The claimant's medical records document she is status post macular hole surgery in both eyes. (Exhibit 1F/1). The claimant went to Todd E. Schneiderman, M.D., in July 2010 for her five year follow-up from her macular hole surgery. (Exhibit 11F/2). The claimant reported her vision was stable. (Exhibit 11F/2). Upon exam her right eye vision was corrected with glasses to 20/40, left eye corrected with glasses to 20/25, her confrontational visual fields were full, and her macular holes remained closed. (Exhibit 11F/1-2). In September 2010, Dr. Schneiderman reported the claimant's subjective complaints about performing activities. (Exhibit 11F/1). In April 2011, optometrist Dr. Dennis Fellner reported the claimant's visual acuity was 20/40+1 on the right and 20/30-2 on the left.

> (Exhibit 13F/1). In July 2011, Dr. Fellner repeated the same corrected vision findings, he found central distortion in both eyes, loss of central receptors, and reported her peripheral vision was normal. (Exhibit 15F). Dr. Fellner further reported it would be difficult for the claimant to perform detailed close tasks and drive a motor vehicle. The undersigned finds this is not a severe impairment because there is no objective medical evidence that it significantly limits the claimant's ability to perform basic work activities. However, the visual limitations supported by the record are included in her residual functional capacity assessment.

AR 21. The ALJ's RFC assessment limits plaintiff "from performing work requiring fine visual acuity." AR 23.

Plaintiff challenges the ALJ's step two finding that her macular degeneration was non-severe. Even assuming plaintiff's vision impairments were severe, however, any error was harmless because the ALJ accounted for her vision impairments in the RFC's limitation regarding fine visual acuity. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *see also Parra v. Astrue,* 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision"); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby were considered later in sequential disability evaluation process); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ in failing to consider obesity at step two was harmless, because ALJ did not err in evaluating plaintiff's impairments at later steps). Although plaintiff argues that the ALJ's error was harmful because the limitation regarding fine visual acuity did not reflect the severity of her limitation, the record does not support her conclusory argument. Rather, the record reflects that Dr. Fellner opined, based on objective testing, that plaintiff would have difficulty performing "detailed close tasks," AR 237, and this limitation is sufficiently accounted for by the ALJ's

RFC. Plaintiff thus has failed to establish reversible error with respect to the ALJ's step two findings.

V. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample*, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The ALJ found, "[T]he claimant's medically determinable impairments could reasonably be expected to cause some symptoms. However, there is evidence of record that the claimant may not be as limited in the ability to function as alleged." AR 25-26. The ALJ discounted plaintiff's credibility for the following reasons: (1) there is no evidence of mental health treatment, counseling, or medication; (2) plaintiff did not take medication for her impairments or pursue systematic treatment; (3) plaintiff's allegations were contradicted by her social contacts, which included spending time with a neighbor, talking to her sister on the phone every few weeks, and waiting on customers before her family's businesses closed; (4) plaintiff likely regards herself as unable to work due to the closure of her family's business, which was the same date that she alleged her disability began; (5) plaintiff's allegations were contradicted by her activities, which included watching television, walking around the block, napping, driving short distances, accompanying her husband on errands, and traveling long distances to vacation with her family; and (6) the alleged severity and limiting effects of plaintiff's mental impairments are not supported by objective medical evidence. AR 22, 26.

Plaintiff contends that the ALJ's adverse credibility finding is erroneous. Plaintiff, however, fails to carry her burden of establishing than any error made by the ALJ was harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (plaintiff has burden of establishing that an ALJ's errors are harmful). As an initial matter, plaintiff does not challenge the ALJ's findings that she did not seek mental health treatment, counseling, or medication; that she did not take medication for her impairments or seek systematic treatment; and that her social contacts were contradictory to her alleged limitations. Lack of treatment is a clear and convincing reason to discount a claimant's testimony, *Burch*, 400 F.3d at 681, as is inconsistency between a claimant's social activities and her alleged limitations, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d

1217, 1224-25 (9th Cir. 2010).

Likewise, the ALJ's finding that plaintiff stopped working because her family business closed, not because of her impairments, is a valid reason to find a claimant less than fully credible. *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010). Although plaintiff contends that she did not file for benefits merely because the business closed and that she was not working at the substantial gainful activity level for the year prior to the business closing, these arguments do not establish that the ALJ's interpretation of the evidence was unreasonable, particularly in light of plaintiff's hearing testimony that she stopped working because "[t]he business closed its doors." AR 40; *see also* AR 142 (indicating that plaintiff stopped working "Due to the economy"); *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Thus, even if the ALJ's fifth and sixth reasons were erroneous, as plaintiff argues, the errors would be harmless because the ALJ gave other valid reasons for discounting plaintiff's credibility, and the erroneous reasons would not negate the validity of the ALJ's overall credibility assessment. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Accordingly, plaintiff has failed to establish reversible error on this issue.

VI. The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis*, 236 F.3d at 511. In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination

to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642.

Plaintiff challenges the ALJ's treatment plaintiff's husband George Kuhr. Mr. Kuhr testified at the hearing that after plaintiff had macular surgery in 2003 and 2004, plaintiff lost her ability to do certain tasks for the family business, including accounting, mixing paint, recognizing customers from afar, and using the cash register. AR 28, 50. He testified that she had headaches and would leave work early on a weekly basis. AR 28, 51. He also described limitations in her ability to drive and certain limitations in the home, including reading recipes. AR 28, 52-53. The ALJ found that Mr. Kuhr's testimony "supports the overall record that the claimant has a visual impairment, but it fails to support finding the claimant's visual impairment is severe, or that she has any limitations on functional capacity greater than that accounted for [in the RFC]." AR 28.

Plaintiff asserts that the ALJ's conclusory finding does not offer a germane reason for finding that she would only be unable to perform work requiring fine visual acuity. Lay witness testimony, however, may appropriately be disregarded if the ALJ properly rejected similar testimony by the plaintiff as not credible. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Mr. Kuhr's statements regarding plaintiff's limitations were similar to plaintiff's statements that she has difficulty reading, cannot recognize faces from a distance, had to leave work early because of headaches, and could only drive short distances during the day. *See* AR 42, 45-47. As discussed above, the ALJ properly discounted the credibility of plaintiff's statements, and therefore plaintiff's challenge to the ALJ's treatment of Mr. Kuhr's statements fails.

VII. The ALJ's Evaluation of the "Other Medical Source" Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick*, 157 F.3d at 722. Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample*, 694 F.2d at 642. In such cases, "the ALJ's conclusion must be upheld." *Morgan*, 169 F.3d at 601. Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The opinion of an "other medical source" such as a chriopractor—who is "not technically deemed to be" an "acceptable medical source" (e.g., a licensed physician or licensed or certified psychologist)—nevertheless is considered "important and should be evaluated [by the ALJ] on key issues such as impairment severity and functional effects, along with the other relevant evidence in the" record. SSR 06–03p, 2006 WL 2329939, *3; *see also Gomez v. Chater*, 74 F.3d 967, 97071 (9th Cir.1996) (opinions of those who are not acceptable medical sources may be given less weight than opinions of those who are); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d). The ALJ may discount the other medical source evidence by providing reasons germane to

each source. *Molina*, 674 F.3d at 1111 (citing *Turner*, 613 F.3d at 1224, and *Lewis*, 236 F.3d at 511).

On January 7, 2011, chiropractor Catherine Niles, D.C., completed a check-box form, opining that plaintiff could frequently lift and/or carry five pounds, occasionally lift and/or carry 10 pounds, stand and/or walk continuously for 15 minutes, stand and/or walk for less than one hour in an eight-hour day, sit continuously for 45 minutes, and sit for four hours in an eight-hour day. AR 226. She also opined plaintiff had a limited ability to push and/or pull because of arthritis in her thumbs. *Id.* The ALJ gave no weight to this opinion because "it is not from an acceptable medical source, it is unsupported by objective evidence such as images, it is a simple check-box form largely completed without medical explanation, and the opinion is inconsistent with the overall objective evidence of record." AR 27.

Plaintiff does not challenge the ALJ's determination that Dr. Niles is not an "acceptable medical source" under the agency's regulations. *See* 20 C.F.R. §§ 404.1513(a) and (d), 416.913(a) and (d). Rather, she contends that Dr. Niles's opined limitations are supported by her treatment notes, which reflect plaintiff's complaints of chronic knee, leg, foot, and low back pain. Plaintiff's arguments, however, do not establish that the ALJ failed to provide germane reasons, supported by substantial evidence, to reject Dr. Niles's opinions. Indeed, the ALJ correctly noted that there is no objective evidence in the record to support Dr. Niles's opinion, which was comprised of a check-box form with little explanation. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ may discredit opinion that is "brief, conclusory, and inadequately supported by clinical findings"). The ALJ therefore did not err in rejecting Dr. Niles's opinion.

VIII. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000). The Grids may be used by the ALJ, however, only if they "*completely and accurately* represent a claimant's limitations." *Tackett*, 180 F.3d at 1101 (emphasis in original). That is, the claimant "must be able to perform the *full range* of jobs in a given category." *Id.* (emphasis in original). If the claimant "has significant non-exertional impairments," then reliance on the Grids is not appropriate.[2] *Ostenbrock*, 240 F.3d at 1162; *Tackett*, 180 F.3d at 1102 (nonexertional impairment, if sufficiently severe, may limit claimant's functional capacity in ways not contemplated by Grids).

Here, the ALJ found that plaintiff could perform work that exists in significant numbers in the national economy based on her RFC[3], age, education, work experience, and the Grids. AR

---

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

[3] The ALJ made the following RFC finding:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work at all exertional levels as defined in 20 CFR 404.1567(c): the claimant can perform simple and some complex tasks; the claimant is able to persist with normal breaks for an eight hour workday; the claimant is capable of accepting instruction from a supervisor; and the claimant can have occasional interaction with coworkers and the general public; she is limited from performing work requiring fine visual acuity.

AR 23.

29-30. The ALJ did not consult a vocational expert. Instead, the ALJ relied on SSR 85-15, which states in relevant part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857 *4. Based on SSR 85-15, the ALJ found that plaintiff's "documented mental limitations do not result in deficits that would preclude the performance of competitive, remunerative work requiring the ability to understand, carryout and remember instructions; use judgment in making work related decisions; respond appropriately to supervisors, co-workers, and work situations; and deal with changes in a routine work setting." AR 30.

The ALJ also considered SSR 85-15 as it pertained to plaintiff's visual limitations:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

SSR 85-15, 1985 WL 56857 *8. The ALJ found that plaintiff's vocational profile was not extremely adverse because although she is of advanced age, "none of the other adverse issues apply." AR 30. The ALJ ultimately concluded that plaintiff's mental and visual "limitations

have little or no effect on the occupational base of unskilled work," and therefore plaintiff was not disabled under the Grids. *Id.*

Plaintiff argues that it was legal error for the ALJ to apply the Grids rather than obtain vocational expert testimony because she had primarily non-exertional impairments. However, "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids." *Desrosiers v. Sec. of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.*; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case."). As discussed above, the ALJ considered both plaintiff's mental and visual impairments and determined that they were not sufficiently severe to significantly limit the range of work.

As to the mental impairments, plaintiff contends that the ALJ failed to consider, as required by SSR 85-15, her testimony that she did not do well under stress and the opinions of examining psychologist David Dixon, Ph.D., that she would have difficulty in social situations and adapting to new environmental conditions.[4] Plaintiff's arguments, however, merely challenge the ALJ's RFC assessment, and as discussed above, plaintiff has failed to establish reversible error with respect to any assignment of error at the RFC stage of the sequential evaluation. Moreover, the ALJ's finding that plaintiff's mental impairments did not significantly limit the range of work plaintiff could perform is supported by substantial evidence. As defendant argues, plaintiff's mental residual functional capacity is for the basic mental demands

[4] Plaintiff did not assign error with respect to the ALJ's treatment of Dr. Dixon's opinions. *See* ECF # 11 at 6.

of unskilled work, including the ability to perform simple and some complex tasks, persist for a normal workday, and accept supervision (AR 23), which is consistent with the unskilled work accounted for in the Grids. Although plaintiff is limited to occasional interaction with coworkers and the general public, that limitation does not significantly erode the number of unskilled jobs available because unskilled work primarily involves work with objects rather than with people. *See* SSR 85-15, 1985 WL 56857 *4.

With respect to her vision impairments, plaintiff maintains that the ALJ erred in finding that her profile was not extremely adverse because there was no finding of transferable skills and plaintiff's past work as a bookkeeper required good vision. As noted, a claimant has an extremely adverse vocational profile when, for example, she is closely approaching retirement age, has a limited education or less, is unskilled or has no transferrable skills, and has essentially a lifetime commitment to a field of work in which good vision is essential. SSR 85-15, 1985 WL 56857 *8; *see also* 20 C.F.R. § 404.1564(3) (defining limited education as 7th grade through 11th grade). Even assuming plaintiff's arguments are correct, the ALJ's finding that plaintiff's vocational profile is not extremely adverse is still supported by substantial evidence because plaintiff completed high school and one year of college (AR 40) and has a history of skilled work. AR 29. Plaintiff thus fails to establish that the ALJ erred in relying on the Grids.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 21, 2014**, as noted in the caption.

DATED this 4th day of March, 2014.

Karen L. Strombom
United States Magistrate Judge